UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Joshua Harris, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> W6LS, Inc. d/b/a WithU and WithU Loans, *et al.* <br><br> *Defendants.* | No. 23 CV 16429 <br><br> Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Joshua Harris and Donita Olds brought this putative class action against Defendants W6LS, Inc. and Caliber Financial Services, Inc.,[1] contending that loan agreements they entered into with W6LS violate state and federal law. [Dkt. 7.] Defendants move to compel arbitration, as required by the loan agreements. [Dkt. 26.][2] Plaintiffs do not dispute that the arbitration agreement exists and purports to require individual arbitration; instead, they argue that the arbitration agreement is unenforceable because it waives their substantive state law rights. Supreme Court precedent supports Plaintiffs' position, so the motion to compel arbitration is denied.[3]

---

[1] The Court does not resolve any issues with respect to the 20 Doe Defendants who have not been identified. [*See* Dkt. 7.]

[2] Defendants state that they are specially appearing for the purpose of moving to compel arbitration and "do not waive and expressly reserve their ability to challenge this Court's subject matter jurisdiction due to Defendants' sovereign immunity from suit." [Dkt. 27 at 1 n.1.] This statement is puzzling. "Subject-matter jurisdiction is the first issue in any case," and the Court has "an independent obligation to determine that jurisdictional requirements are satisfied." *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 731 (7th Cir. 2021) (cleaned up). There is no jurisdictional problem, here, however. Defendants contend that they enjoy tribal sovereign immunity [Dkt. 27 at 1], but this type of sovereign immunity is not jurisdictional, *Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818, 822–23 (7th Cir. 2016), so the Court can entertain the motion to compel without overstepping the bounds of its Article III power.

[3] The Court has reviewed Plaintiffs' proposed additional filing. [Dkt. 37.]

1

## I. Background

Little need be said about the substance of Plaintiffs' allegations in this posture. Harris and Olds each took out a $600 loan from W6LS d/b/a WithU Loans. [Dkt. 7 ¶¶ 25–26; Dkt. 7-1 Exh. A–B (copies of the loan agreements).][4] The contracts disclosed interest rates approaching 500% annually. [Dkt. 7 ¶¶ 25–26.] The contracts also contained identical arbitration provisions. [Dkt. 7-1 at 16–23 (Harris's agreement), 42–49 (Olds's agreement).][5] The arbitration provision permits either party to require any "Dispute" to be decided by individual arbitration, rather than litigation, and that the provision is broad enough to cover the disputes at issue here. [Dkt. 7-1 at 18–23; Dkt. 27 at 3–9; *see* Dkt. 33 (not contesting this point).] The arbitration provision states that federal law and the law of the Otoe-Missouria Tribe of Indians ("Tribal Law") apply to the loan agreement. [Dkt. 7-1 at 19; *see id.* at 4 (defining "Applicable Law" to mean federal and Tribal Law).]

Plaintiffs filed a putative class action alleging that Defendants' loans violate state and federal law. [Dkt. 7.] Defendants move to compel individual arbitration as required by the loan agreements. [Dkt. 26.]

## II. Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs when courts must compel arbitration. Section 2 of the FAA provides that any written contract "evidencing a transaction involving commerce to settle by arbitration a controversy

---

[4] Citations to exhibits refer to the electronic pagination, not the page numbers in the underlying documents. Citations to briefs refer to the pagination in the briefs themselves.
[5] Hereafter, for convenience, the Court cites the relevant portion of Harris's agreement without citing the identical portion of Olds's agreement.

2

thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A motion to compel is granted "if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). However, an arbitration agreement that violates public policy is not enforceable. *See, e.g.*, *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235–36 (2013).

### III. Analysis

It is undisputed that the parties entered into loan agreements that contain provisions requiring individual arbitration. [Dkt. 27 at 3–9; Dkt. 33 at 1.][6] The only question, therefore, is whether the arbitration agreement is enforceable. The Court agrees with Plaintiffs that it is not.

### A. Delegation Clause

At the threshold, the Court must determine whether Plaintiffs have challenged the clause delegating the question of the enforceability of the arbitration provision to the arbitrator. [Dkt. 7-1 at 18 (defining arbitrable disputes to include those relating to the "enforceability" of "this Arbitration Agreement").] This question is for the arbitrator unless Plaintiffs have "challenged the delegation provision specifically." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010). Plaintiffs argue that the

---

[6] The briefs discuss equitable estoppel, but Defendants clarify that they only argue that Plaintiffs are estopped from challenging the existence and validity of the loan agreements, not the arbitration provision [Dkt. 36 at 1–2], so the Court does not discuss this issue. Nor does the Court address Plaintiffs' arguments besides the prospective waiver doctrine.

3

"delegation clause is unenforceable for the same reasons as the underlying arbitration agreement." [Dkt. 33 at 10–11.] Defendants contend that *Rent-A-Center* requires Plaintiffs' arguments about the delegation clause to be distinct from their arguments about the arbitration agreement as a whole; because Plaintiffs' arguments "have nothing to do with the delegation provisions," Defendants urge that they do not constitute a specific challenge to the delegation provision. [Dkt. 36 at 10.]

The Court disagrees. "The Seventh Circuit has not addressed the enforceability of delegation provisions in tribal lending contracts," *Fahy v. Minto Dev. Corp.*, —F. Supp. 3d—, 2024 WL 1116050, at *8 (N.D. Ill. Mar. 14, 2024), but the Second, Third, and Fourth Circuits have held that under *Rent-A-Center*, "[a] party may contest the enforceability of the delegation clause with the same arguments it employs to contest the enforceability of the overall arbitration agreement." *Hengle v. Treppa*, 19 F.4th 324, 335 (4th Cir. 2021) (citation omitted); *accord Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 238 (3d Cir. 2020); *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019). In the absence of Seventh Circuit authority to the contrary, the Court will follow the consensus view of the circuits that have addressed this issue.

Defendants point to the Ninth Circuit's opinion in *Brice v. Haynes Investments, LLC*, which came out the other way than the Second, Third, and Fourth Circuits. 13 F.4th 823, 833–36 (9th Cir. 2021); *see id.* at 836 ("Although some of the out-of-circuit decisions properly tee up the question, none of them follow through."). [Dkt. 36 at 10–11.] The problem for Defendants is that, as they acknowledge, the Ninth Circuit voted to rehear *Brice* en banc and vacated the panel opinion, 35 F.4th 1219 (9th Cir. 2022),

4

and then the case settled. "Defendants submit that the original opinion is nonetheless highly persuasive," but they do not explain why or cite authority for the proposition that the Court should treat the vacated opinion as persuasive. [Dkt. 36 at 10 n.1.]

In fact, the opposite is true. *Brice* was not a case where Ninth Circuit precedent precluded the panel from reaching what it viewed as the correct decision, which could have required en banc review even if the panel opinion's reasoning was sound. *Cf. Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc) (discussing when a panel may depart from circuit precedent). Rather, the *Brice* panel created a circuit split, and the full Ninth Circuit likely granted rehearing en banc because it doubted that outcome. Under these circumstances, the Court treats the grant of en banc review as a signal that the *Brice* panel erred, which reinforces the correctness of the Second, Third, and Fourth Circuits' approach.

The Court holds that Plaintiffs have adequately challenged the delegation clause under *Rent-A-Center*, and if they succeed on their challenge to the arbitration agreement as a whole, the delegation clause must fall with the rest of the agreement.

B. **Prospective Waiver Doctrine**

Plaintiffs argue that the arbitration agreement as a whole is unenforceable because it impermissibly purports to waive state substantive rights. [Dkt. 33 at 4–5.] The crux of this issue is whether the prospective waiver (or effective vindication [*see* Dkt. 36 at 2]) doctrine applies only to waivers of federal substantive rights, or if it also extends to state substantive rights. The Court concludes that it does.

### 1. Early Supreme Court Caselaw

Beginning with *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, the Supreme Court has indicated that an arbitration provision that prospectively waived statutory rights is invalid on public policy grounds. It "note[d] that in the event the [arbitration provision's] choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, [the Court] would have little hesitation in condemning the agreement as against public policy." 473 U.S. 614, 637 n.19 (1985) (collecting authorities).

The Court has reiterated the doctrine in subsequent cases. In *14 Penn Plaza LLC v. Pyett*, the Court stated that "federal antidiscrimination rights may not be prospectively waived," but "an agreement to arbitrate those statutory claims" does not constitute "a prospective waiver of the substantive right." 556 U.S. 247, 265 (2009) (citation omitted). *Italian Colors* explained that the Supreme Court has "expressed a willingness to invalidate, on public policy grounds, arbitration agreements that operate as a prospective waiver of a party's *right to pursue* statutory remedies," which "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights," but it did not invalidate an individual-arbitration provision that might have made it too costly to economically pursue certain claims. 570 U.S. at 235–36 (cleaned up).

The *Italian Colors* dissent argued that the doctrine only applied to waivers of federal substantive rights and that the majority erred by relying on a case involving state law to uphold an arbitration provision:

6

> *AT&T Mobility* [*LLC v. Concepcion*, 563 U.S. 333 (2011),] involved a *state* law, and therefore could not possibly implicate the effective-vindication rule. When a state rule allegedly conflicts with the FAA, we apply standard preemption principles, asking whether the state law frustrates the FAA's purposes and objectives. If the state rule does so—as the Court found in *AT&T Mobility*—the Supremacy Clause requires its invalidation. We have no earthly interest (quite the contrary) in vindicating that law. Our effective-vindication rule comes into play only when the FAA is alleged to conflict with another *federal* law, like the Sherman Act here. In that all-federal context, one law does not automatically bow to the other, and the effective-vindication rule serves as a way to reconcile any tension between them.

*Id.* at 252 (Kagan, J., dissenting). This view, of course, did not carry the day. *See id.* at 235–38 & 238 n.5 (majority op.) (holding that the prospective waiver doctrine does not require that a party be able to pursue its claims in an economically effective manner and rejecting the dissent's attempt to distinguish *AT&T Mobility*).

    2.    *Viking River*

Recently, the Court decided *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022), a case that is central to the arguments here. The Court stated, in a footnote:

> In briefing before this Court, Viking argued that the principle that the FAA does not mandate enforcement of provisions waiving substantive rights is limited to federal statutes. This argument is erroneous. The basis of this principle is not anything unique about federal statutes. It is that the FAA requires only the enforcement of "provisions" to settle a controversy "by arbitration," [9 U.S.C.] § 2, and not any provision that happens to appear in a contract that features an arbitration clause. That is why we mentioned this principle in *Preston* [*v. Ferrer*], which concerned claims arising under state law. See [552 U.S. 346, 359 (2008)[7]] (noting that under the agreement, a party "relinquished no substantive rights California law may accord him").

---

[7]     *Viking River* cites *Preston* at page 360, but the quotation actually appears on page 359. The Court has modified the citation to reflect the correct page.

7

*Id.* at 653 n.5 (cleaned up). Plaintiffs argue that this footnote confirms that "[t]he prospective waiver doctrine applies to state statutory claims as well as federal." [Dkt. 33 at 4.][8] Defendants counter that *Viking River* was not a prospective waiver case and that the opinion "contains no discussion whatsoever on the doctrine and does not alter the consensus of federal courts that the doctrine is limited to preserving federal statutory rights." [Dkt. 36 at 4–5.]

While Defendants are correct that *Viking River* did not expressly mention the prospective waiver or effective vindication doctrine, context makes clear that footnote 5 is about that doctrine. The *Viking River* opinion cites *Preston*, which in turn cites *Mitsubishi* in context of the prospective waiver doctrine. *See* 596 U.S. at 653 n.5; *Preston*, 552 U.S. at 359. And the argument the Supreme Court was responding to was about the prospective waiver doctrine. Viking River stated in its reply brief:

> While Moriana repeatedly invokes *Mitsubishi* for the supposed rule that "an arbitration agreement cannot waive an entire statutory cause of action," that rule applies only to waivers of "federal statutory rights," not state-law ones. *Italian Colors*, 570 U.S. at 235. When it comes to

---

[8] Plaintiffs also cite the Second Circuit decision *Gingras* in support of this proposition, but that decision does not support their argument. While *Gingras* referenced state law claims in connection with the prospective waiver doctrine, it had no need to decide whether a waiver of substantive state law rights makes an arbitration agreement unenforceable because the agreement there also waived federal substantive rights. 922 F.3d at 127. In a later decision, the Second Circuit did not read *Gingras* to settle this question. *Doctor's Associates, LLC v. Tripathi*, 794 F. App'x 91, 94 (2d Cir. 2019) (nonprecedential) ("[T]hese precedents expressly deal only with federal statutory rights, which the Tripathis did not assert in the California state-court action. Moreover, even if some variant of the effective-vindication rule were to apply in the context of state statutory rights, *see, e.g.*, [*Gingras*, 922 F.3d at 127], such a rule would not apply here …." (cleaned up)).
 *Doctor's Associates* also does not help Defendants because the arbitration clause there simply required the parties to arbitrate their state law claims; it did not waive those rights. *See id.* The same reasoning applies to federal rights, *see 14 Penn Plaza*, 556 U.S. at 265, so *Doctor's Associates* is neutral on the question of whether the prospective waiver doctrine applies to substantive state law rights.

> state efforts to insulate a state law from bilateral arbitration, the FAA and the Supremacy Clause supply the rule of decision."

Reply Brief at 6 n.1, 2022 WL 839398 (cleaned up).

Nor can Defendants escape the conclusion that *Viking River* meant what it said when it rejected this argument: "In briefing before this Court, Viking argued that the principle that the FAA does not mandate enforcement of provisions waiving substantive rights is limited to federal statutes. This argument is erroneous." 596 U.S. at 653 n.5. This is not, as Defendants argue, "reiterat[ing] the unremarkable position that an agreement to arbitrate merely submits resolution of statutory rights to an arbitral forum pursuant to the parties' agreed upon procedure." [Dkt. 36 at 5.] That is what the Supreme Court stated in the main text on the same page:

> Moriana is correct that the FAA does not require courts to enforce contractual waivers of substantive rights and remedies. The FAA's mandate is to enforce *arbitration agreements*. … An arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed. And so we have said that by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral forum.

596 U.S. at 653 (cleaned up). Footnote 5 makes a distinct point, that the prospective waiver principle applies to state as well as federal substantive rights. *Id.* at 653 n.5.

The Court also disagrees that a "consensus" of courts had recognized that the prospective waiver doctrine does not apply to state substantive rights prior to *Viking River*. Defendants principally rely on the dissent in *Italian Colors*, 570 U.S. at 252 (Kagan, J., dissenting), but the dissent did not prevail, and the relevant passage did not note a point of agreement with the majority, *see id.* at 235–38 & 238 n.5 (majority op.) (disagreeing with the dissent's discussion of *AT&T Mobility*); *see also Students*

*for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023) ("A dissenting opinion is generally not the best source of legal advice on how to comply with the majority opinion."). The *Italian Colors* dissent did not speak for a majority of the Supreme Court regarding the prospective waiver doctrine.

The lower court cases that Defendants contend constitute the consensus suffer from one of two flaws. Some do not squarely address whether the doctrine applies to state substantive rights. For example, in *Hengle*, the Fourth Circuit confronted a waiver of federal and state law in favor of tribal law and concluded that the waiver rendered the arbitration provision invalid. 19 F.4th at 336–42; *accord Smith v. W. Sky Fin., LLC*, 168 F. Supp. 3d 778, 784 (E.D. Pa. 2016); *Ryan v. Delbert Servs. Corp.*, 2016 WL 4702352, at *5 (E.D. Pa. 2016). *Hengle* framed the doctrine in terms of waiver of federal rights, but it did not address whether an arbitration clause that retains federal rights but waives state rights is enforceable. Staying that "[an] arbitration provision [that] impermissibly waives federal substantive rights without recourse to federal substantive law" "is unenforceable as a violation of public policy," 19 F.4th at 338, is not equivalent to saying that an arbitration clause that waives state substantive rights but retains federal rights *is* enforceable.

The pre-*Viking River* cases that do expressly discuss whether the prospective waiver doctrine applies to state substantive rights rely on the *Italian Colors* dissent. *See Torres v. CleanNet, U.S.A., Inc.*, 90 F. Supp. 3d 369, 377–78 (E.D. Pa. 2015); *see also Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 935–36 (9th Cir. 2013) (not cited by Defendants but relying on the *Italian Colors* dissent for the same point). But

10

because these decisions predated *Viking River*, they necessarily could not explain how following the *Italian Colors* dissent is consistent with the *Viking River* majority. Perhaps the *Italian Colors* dissent was the most persuasive authority available on the question of whether the doctrine applies to state rights at the time, and nothing in the *Italian Colors* majority expressly contracts the dissent's view. That is no longer the case post-*Viking River*, however, so these decisions' persuasive value is minimal.

Defendants' final point about *Viking River* also misses the mark. They argue that it matters that "the holding in *Viking River* enforced an arbitration agreement as to individual claims because the FAA preempted contrary state law. … [T]he Court did not enforce state law while at the same time compelling arbitration. This further shows the FAA is not concerned with preserving rights under state law." [Dkt. 36 at 5.] This does not follow. The Supreme Court's reasoning is "just as binding" as its holdings. *Bucklew v. Precythe*, 587 U.S. 119, 136 (2019). Footnote 5 appeared in a discussion of why the arbitration agreement was enforceable, and its reasoning—explaining that *Preston* (and implicitly *Mitsubishi*) do not distinguish between federal and state sources of substantive rights—speaks for a majority of the Supreme Court. 596 U.S. at 653 & n.5. Even if the footnote was technically unnecessary to the *Viking River* decision, it is telling that the majority expressly stated that "[t]he basis of this principle is not anything unique about federal statutes," 596 U.S. at 653 n.5, rather than reserving the question, as the Supreme Court often does. *See, e.g.*, *Luna Perez v. Sturgess Pub. Schs.*, 598 U.S. 142, 149 (2023) (noting that a previous opinion "went out of its way to reserve rather than decide [a] question" (citation omitted)); *cf. Reich*

11

*v. Cont'l Cas. Co.*, 33 F.3d 754, 757 (7th Cir. 1994) (noting the persuasive value of recent, considered dicta).

### 3. Post-*Viking River* Caselaw

Defendants next cite post-*Viking River* decisions to bolster their argument that the Supreme Court did not recognize that the prospective waiver doctrine applies to waivers of state substantive law in addition to federal substantive law. [Dkt. 36 at 5–6.] These efforts fail.

Defendants cite *Rivas v. Coverall North America, Inc.*, 2024 WL 1342738 (9th Cir. Mar. 29, 2024) (nonprecedential), which they submit "further confirms that *Viking River* did not extend the doctrine to preserving state rights." [Dkt. 36 at 5.] There, the plaintiff could not afford to pay his share of the arbitration filing fee, which he argued meant he could not "effectively vindicate his rights in arbitration because the delegation clause purported to require cost-splitting just to appoint an arbitrator to decide gateway issues of arbitrability." 2024 WL 1342738, at *2 (cleaned up). *Rivas* noted that *Italian Colors* left open the possibility that the prospective waiver doctrine "may 'perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable,'" *id.* (quoting *Italian Colors*, 570 U.S. at 236), but it cited pre-*Viking River* circuit precedent holding that this doctrine 'does not extend to state statutes,' *see id.* (quoting *Ferguson*, 733 F.3d at 936). *Ferguson* relied on the *Italian Colors* dissent, with which it thought the *Italian Colors* majority would agree on Supremacy Clause grounds. 773 F.3d at 935–36. But *Viking River* took the opposite view, 596 U.S. at 653 n.5, and the Ninth Circuit did not explain how continuing to follow the *Italian Colors* dissent squares with *Viking River*.

12

*See Rivas*, 2024 WL 1342738, at *2. *Rivas* is not binding on this Court, and its lack of analysis on this point renders it unpersuasive.

Defendants also cite *Walton v. Uprova Credit LLC*, which interpreted *Viking River* not to extend the prospective waiver doctrine to state statutes:

> Extending the prospective waiver rule to state law claims is, in our view, incompatible with the rule's purpose. The prospective waiver rule rests on the uncontested understanding that, in crafting the FAA, Congress did not intend to preempt rights created by other federal statutes. …
>
> Mr. Walton attempts to invoke *Viking River Cruises, Inc. v. Moriana* for the proposition that the Supreme Court has condoned the application of the prospective waiver rule to claims arising under state law. In that decision, the Court characterized as "erroneous" the petitioner's argument "that the principle that the FAA does not mandate enforcement of provisions waiving substantive rights is limited to federal statutes." Stripped of its context, this footnote would surely lend itself to Mr. Walton's portrayal. However, nowhere in the Viking River's decision did the Court mention the prospective waiver doctrine (or its alternative namesake, the effective vindication exception). To the contrary, the Court simply reiterated that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in the arbitral forum." In other words, substantive statutory rights—whether they be federal or state—are not nullified simply by virtue of their resolution in an arbitral, rather than a judicial, forum.
>
> More relevant to the case at bar is the holding in *Italian Colors*, where the Supreme Court upheld arbitration agreements that precluded class arbitration of federal antitrust claims, despite the allegation that individual claims were not worth the expense involved in proving them. … Though Justice Kagan rejected the majority opinion's narrow interpretation of the prospective waiver rule, she, too, affirmed that the rule has no bearing on the vindication of state law …. Rather, when compelling arbitration under the FAA conflicts with state law, standard preemption principles dictate that federal law must prevail.
>
> In light of these controlling principles, we disagree with Mr. Walton that the disclaimer of state law renders the delegation clause unenforceable under the prospective waiver rule. No fair reading of the rule's purpose, nor of Supreme Court caselaw, supports such a conclusion. The delegation clause at issue here repeatedly affirms the applicability of

> federal law and therefore contains no waiver of federal rights. By that measure, the delegation clause is enforceable.

—F. Supp. 3d—, 2024 WL 1241836, at *8–9 (S.D. Ind. Mar. 21, 2024) (cleaned up). [*See* Dkt. 36 at 5–6.]

The *Walton* court thoroughly explained why it believes that the prospective waiver doctrine does not apply to state statutes, but this Court respectfully disagrees. The *Walton* court reads *Viking River* not to address prospective waiver, *see* 2024 WL 1241836, at *9 ("[N]owhere in the *Viking River*'s decision did the Court mention the prospective waiver doctrine (or its alternative namesake, the effective vindication exception)."), but this Court interprets footnote 5 to be a response to an argument about the scope of the prospective waiver doctrine. *See Viking River*, 596 U.S. at 653 n.5; Reply Brief at 6 n.1, 2022 WL 839398. The *Italian Colors* dissent's analysis that the doctrine does not apply to substantive state law rights, no matter how well reasoned, must give way to the *Viking River* majority.

Plaintiffs cite two district court opinions that reached the same conclusion as this Court does. [Dkt. 33 at 4–5.][9] In *Fahy*, the court reasoned:

> The defendants also contend that the prospective waiver doctrine applies only to waivers of federal law. But the Supreme Court directly addressed this contention in *Viking River Cruises, Inc. v. Moriana*. In that case, the defendant argued in briefing that the prospective waiver doctrine applied only to waivers of federal statutes. The Court rejected the defendant's argument as "erroneous" and highlighted its discussion of the prospective waiver doctrine in *Preston v. Ferrer*, a case that concerned state law claims. The defendants attempt to downplay the significance of the Supreme Court's language by calling it "dicta." But the Seventh Circuit has stated that absent controlling precedent,

---

[9] Plaintiffs also cite *Harris v. FSST Management Services*, —F. Supp. 3d—, 2023 WL 5096295, at *4 (N.D. Ill. Aug. 9, 2023), but in that case, there was a waiver of federal and state law, making it distinguishable on the same grounds as *Gingras*. [*See* Dkt. 36 at 7.]

14

> considered Supreme Court dictum "provides the best, though not an infallible, guide to what the law is, and it will ordinarily be the duty of a lower court to be guided by it." *Reich*, [33 F.3d at 757].
>
> This Court finds no reason to discount the Supreme Court's express rejection of the defendant's argument in *Viking River Cruises, Inc.*

2024 WL 1116050, at *13–14 (cleaned up); *accord Fitzgerald v. Wildcat*, —F. Supp. 3d—, 2023 WL 5345302, at *9–10 (W.D. Va. Aug. 18, 2023). The Court agrees with these decisions, which in its view correctly recognize that footnote 5 in *Viking River* is a clear statement about the scope of the prospective waiver doctrine.

Defendants counter that "Plaintiffs' position and their cited cases … cannot be reconciled with Justice Kagan's explanation of the Effective Vindication Doctrine's origins and its purpose. Plaintiffs and the cases they rely upon offer no rationale as to why the FAA or a federal court should have any interest in preserving rights under any particular state law." [Dkt. 36 at 6–7.] Plaintiffs need not reconcile their position with a dissent, however, and even if Defendants are correct about the policy rationale underlying the prospective waiver doctrine, that would not change the fact that a majority of the Supreme Court said that the doctrine applies to state law rights.[10]

---

[10] The fact that the two *Italian Colors* dissenters who remained on the Court when it decided *Viking River* joined the majority in that decision does not imply that *Viking River*'s articulation of the prospective waiver doctrine is the same as the *Italian Colors* dissent's. In *Edwards v. Vannoy*, the majority suggested that it was inconsistent for Justice Kagan to "impugn today's majority for supposedly shortchanging criminal defendants" when she had dissented from *Ramos v. Louisiana*, the rule of which the Supreme Court declined to give retroactive effect in *Edwards*. 593 U.S. 255, 275 (2021). The dissent replied: "I dissented in *Ramos* precisely because of its abandonment of *stare decisis*. Now that *Ramos* is the law, *stare decisis* is on its side. I take the decision on its own terms, and give it all the consequence it deserves." *Id.* at 295 (Kagan, J., dissenting) (citations omitted). This Court does not assume that the dissenters in *Italian Colors* continued to adhere to that opinion's conception of the prospective waiver doctrine when they voted in *Viking River*. Those Justices could have declined to join footnote 5 if they disagreed with it, which would have rendered it a plurality

15

\* \* \*

For the foregoing reasons, the Court holds that *Viking River* establishes that the prospective waiver doctrine applies to waivers of substantive state law rights, in addition to federal rights.

### C. Application to W6LS's Arbitration Agreement

Having concluded that the prospective waiver doctrine applies to substantive state rights, the Court now applies the doctrine to the arbitration agreement here. If the contracts included a waiver of federal rights, ample precedent supports holding that the arbitration agreement is wholly invalid. *See, e.g.*, *Hengle*, 19 F.4th at 342–44; *Williams*, 965 F.3d at 241–42; *Gingras*, 922 F.3d at 127; *cf. Italian Colors*, 570 U.S. at 235–36.[11] *Viking River* clarified that the prospective waiver doctrine applies to state substantive law as well as federal substantive law. 596 U.S. at 653 n.5. The Court therefore concludes that the principles in *Hengle* and the other cases apply here too. Because the agreement purports to waive the application of all state substantive law, the arbitration agreement is unenforceable in full. *See Fahy*, 2024 WL 1116050, at \*12–14 (holding that both the delegation clause and arbitration provision were unenforceable because the agreement purported to waive substantive state rights); *Fitzgerald*, 2023 WL 5345302, at \*9–11 (same). Defendants argue only that the

---

opinion. *See Viking River*, 596 U.S. at 664–65 (concurring opinion of Barrett, J., joined by Kavanagh, J., and by Roberts, C.J., in relevant part, not joining Part II of the majority, and dissenting opinion of Thomas, J.); *cf., e.g.*, *Johnson v. Guzman Chavez*, 594 U.S. 523, 525 (2021) ("Justice ALITO delivered the opinion of the Court, except as to footnote 4.").

[11] *Brice* is on the other side, concluding that the question of whether the contract waived federal substantive law was a question for the arbitrator because the delegation clause was enforceable. 13 F.4th at 828–32. But as discussed above, *Brice* is not persuasive.

16

prospective waiver doctrine does not apply to substantive state law rights; they make no alternative argument that if the Court holds that the doctrine applies to state law, the Court should nevertheless enforce the arbitration agreement. [*Cf.* Dkt. 36 at 7–8 (arguing only that the contracts do not waive federal rights).] They have therefore waived any argument they could have made on this point. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). The Court holds that because the arbitration agreement purports to waive all substantive state law rights, it is unenforceable.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to compel arbitration [Dkt. 26] is denied.

Enter: 23-cv-16429
Date: May 22, 2024

Lindsay C. Jenkins
United States District Judge